ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **CARLOS HUMBERTO GARCÍA TORRES**<br>DEMANDANTE(S)-PETICIONARIA(S)<br><br>V.<br><br>**MARÍA VANESSA ALBERTAZZI ACUÑA**<br>DEMANDADA(S)-RECURRIDA(S) | **KLCE202400081** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **CAGUAS**<br><br>Caso Núm.:<br>**CG2020RF00344 (502)**<br><br>Sobre:<br>Divorcio; Pensión Ex Cónyuge |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 30 de abril de 2025.

Comparece ante este Tribunal de Apelaciones, el señor **CARLOS HUMBERTO GARCÍA TORRES** (señor **GARCÍA TORRES**) mediante *Petición* incoada el 22 de enero de 2024. En su recurso, nos solicita que revisemos la *Orden* dictada el 30 de noviembre de 2023 por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas.[1] Mediante la referida decisión, el foro recurrido declaró sin lugar la *Solicitud de Sentencia Sumaria* presentada el 21 de septiembre de 2023 por el señor **GARCÍA TORRES**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

Los señores **GARCÍA TORRES** y **MARÍA V. ALBERTAZZI ACUÑA** (señora **ALBERTAZZI ACUÑA**) contrajeron matrimonio el 13 de enero de 1996. El 10 de julio de 2020, se entabló *Demanda* sobre divorcio por la causal de ruptura irreparable.[2]

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 1 de diciembre de 2023. Apéndice de la *Petición*, pág. 15.

[2] Apéndice de la *Petición*, págs. 151- 153.

Así las cosas, el 29 de enero de 2021, se emitió una *Sentencia* mediante la cual se decretó roto y disuelto el vínculo matrimonial entre las partes por la causal de ruptura irreparable; se concedió patria potestad compartida; se dispuso pensión alimentaria provisional en beneficio del hijo menor de edad; y se estableció la residencia conyugal como hogar seguro del menor SGA.[3]

Al poco tiempo, el 18 de junio de 2021, la señora **ALBERTAZZI ACUÑA** presentó una *Urgente Solicitud de Alimentos ExCónyuge*.[4] Alegó que durante su matrimonio se dedicó a la crianza de sus dos (2) hijos; en apoyar al señor **GARCÍA TORRES,** su esposo, en todo lo concerniente a su desarrollo profesional; y éste fue el principal y exclusivo proveedor. Añadió que no tenía acceso al dinero y sufre de condiciones de salud que necesitan cubierta médica, por lo que se encontraba en precario. Por lo cual, solicitó una pensión excónyuge por una cantidad no menor de $5,000.00 mensuales para atender sus necesidades.

Más tarde, el 20 de enero de 2022, el señor **GARCÍA TORRES** presentó una *Moción en Cumplimiento de Orden* enunciando haber entregado la cantidad de $30,000.00 a la señora **ALBERTAZZI ACUÑA** "como adelanto de su participación en los bienes que posee la comunidad de bienes que existe entre las partes".[5] Expuso que cualquier alegada necesidad que la señora **ALBERTAZZI ACUÑA** tuviera de alimentos, se tornó académica, toda vez que, cuenta con medios suficientes para suplir sus necesidades y suplicó que el petitorio de la pensión ex cónyuge fuera desestimado.

En audiencia celebrada el 27 de enero de 2022, entre otras cosas, se informó que hubo un problema con el nombre de la señora **ALBERTAZZI ACUÑA** en el cheque de gerente, pero que el asunto estaba siendo atendido.[6] Además, se escuchó el testimonio la señora **ALBERTAZZI ACUÑA** y se pautó la continuación para los días 17 y 18 de marzo de 2022. En esas fechas, así como los días 26 y 30 de agosto de 2022,

---

[3] Véase *Sentencia* de 29 de enero de 2021. Entrada núm. 62 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[4] Apéndice de la *Petición*, págs. 143- 144.
[5] *Íd.*, págs. 33- 35.
[6] Apéndice de la *Petición*, págs. 36- 38.

se celebraron audiencias evidenciarias para determinar la procedencia de los alimentos excónyuge reclamados por la señora **ALBERTAZZI ACUÑA**.[7]

El 20 de mayo de 2022, se decretó *Resolución* acogiendo el *Informe de Pensión Alimentaria* rendido por la Examinadora de Pensiones Alimentarias.[8] En esencia, se impuso una pensión alimentaria **provisional** de $567.01 mensuales, efectivo al 9 de febrero de 2022, a ser pagada directamente a la señora **ALBERTAZZI ACUÑA**. Así como, la aportación de 79% de los gastos universitarios y gastos médicos. Se señaló audiencia para el 24 de mayo de 2022.

Posteriormente, el 8 de noviembre de 2022, se decidió una *Resolución* en la cual, entre otras cosas, dispuso una pensión ex cónyuge de $1,400.00 mensuales, retroactivo a junio de 2021.[9] Asimismo, impuso el pago de utilidades, plan médico y teléfono del hogar y celular. El Tribunal reconoció que, en enero de 2022, la señora **ALBERTAZZI ACUÑA** recibió la cantidad de $30,000.00 en concepto del adelanto de su participación en la extinta Sociedad Legal de Gananciales. Adicionalmente, se impuso un plan de pago de $500.00 mensuales, a partir de diciembre de 2022, por concepto de la deuda retroactiva. Por último, ordenó el pago de honorarios de abogados por $2,000.00 favor de la señora **ALBERTAZZI ACUÑA**.

El 10 de noviembre de 2022, la señora **ALBERTAZZI ACUÑA** presentó su *Solicitud de Reconsideración*.[10] En su escrito, procuró aumentar la cantidad fijada como pensión ex cónyuge fundamentándose en que sus gastos ascendían a $2,004.33 mensuales. Por ende, el 14 de noviembre de 2022, mediante *Orden* se reconsideró dicha determinación en parte, explicando que sí tomó en consideración los gastos informados por la señora **ALBERTAZZI ACUÑA**, pero que no todos eran necesarios, y reconoció haber realizado un error matemático en la

---

[7] Entradas núm. 256 y 257 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[8] Apéndice de la *Petición*, págs. 39- 42. En la audiencia ante la Examinadora de Pensiones Alimentarias, se imputó como ingreso no recurrente la cuantía de $30,000.00 recibido, en enero de 2022, por la señora **ALBERTAZZI ACUÑA**. Ello, a tenor con la definición de ingresos no recurrentes contenida en el Reglamento 8529-2014 Art. 9 (1)(e), mejor conocido como *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico*.

[9] Dicha determinación judicial fue notificada y archivada en autos el 9 de noviembre de 2022. Apéndice de la *Petición*, págs. 43- 53. Es menester señalar que en esta *Resolución* no se determinó los $30,000.00 como un ingreso de la señora **ALBERTAZZI ACUÑA**.

[10] Apéndice de la *Petición*, págs. 90- 92.

cuantía otorgada.[11] De este modo, aumentó la pensión alimentaria a $1,800.00 mensuales.

El 28 de noviembre de 2022, el señor GARCÍA TORRES presentó *Moción de Reconsideración.*[12] Adujo que la señora ALBERTAZZI ACUÑA sí contaba con ingresos para sufragar sus gastos, toda vez que, había recibido $30,000.00 por concepto de adelanto por su participación en la extinta sociedad legal de gananciales, así como la ayuda económica que le brinda el señor HÉCTOR ALBERTAZZI (hermano). Enfatizó que de considerarse como ingresos ambas cifras, no correspondía en derecho atribuirle la cantidad de $1,800.00 mensuales en concepto de pensión ex cónyuge.

Luego de varios trámites procesales, el 26 de enero de 2023, el señor GARCÍA TORRES presentó *Urgentísima Moción en Torno a Evidencia Nueva sobre Capacidad Económica de la Parte Demandada.*[13] Explicó que advino en conocimiento de que el 6 de agosto de 2020, se realizó la venta de ciertas propiedades dejadas en herencia a los señores ALBERTAZZI ACUÑA, ello, por la cantidad aproximada de $197,000.00 dólares (ciento diez millones de colones), en los cuales la señora ALBERTAZZI ACUÑA tiene una participación de 1/3 parte.[14] Destacó que, la señora ALBERTAZZI ACUÑA afirmó, bajo juramento, que carecía de medios económicos, y ello no se basó en la verdad, toda vez que, el dinero que recibía del señor HÉCTOR ALBERTAZZI realmente era parte del dinero de la venta de los inmuebles. Además, aclaró que la señora ALBERTAZZI ACUÑA nunca notificó sobre la venta de las pertenencias de sus padres fallecidos y recibía dicho ingreso.

El 24 de febrero de 2023, la señora ALBERTAZZI ACUÑA presentó *Oposición a Urgentísima Moción en Torno a Evidencia Nueva sobre Capacidad Económica de la*

---

[11] Apéndice de la *Petición*, págs. 88- 89.

[12] *Íd.*, págs. 95- 99. Cabe resaltar que el 16 de noviembre de 2022, el señor GARCÍA TORRES presentó una *Urgentísima Moción en torno a la Regla 8.4 de las de Procedimiento Civil* en la cual planteo que el tribunal había actuado prematuramente al resolver la reconsideración de la señora ALBERTAZZI ACUÑA dado que no le concedió un plazo para expresarse y suplicó se dejara sin efecto su determinación al respecto. Entonces, el 23 de noviembre de 2022, se expidió *Orden* dejando sin efecto la *Resolución* y se concedió veinte (20) días para replicar. Apéndice de la *Petición*, págs. 93- 94 y 100.

[13] *Íd.*, págs. 102- 105. Entrada núm. 274 y sus anejos del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[14] El señor GARCÍA TORRES detalla que en la deposición tomada el 2 de marzo de 2021 a la señora ALBERTAZZI ACUÑA se le preguntó sobre una herencia en Costa Rica, a lo que ella contestó que la propiedad aún no se había vendido y era su hermano quien le ayudaba económicamente para ella poder salir adelante junto a sus hijos. Apéndice de la *Petición*, pág. 103.

*Parte Demandada.*[15] Arguyó que, se debía celebrar una audiencia para presentar evidencia, pues el señor **GARCÍA TORRES** no sostuvo sus alegaciones en cuanto a que la señora **ALBERTAZZI ACUÑA** recibió dinero de la venta de la propiedad en Costa Rica, y su condición económica había cambiado de manera extraordinaria para que se revocara la pensión alimentaria ex cónyuge. El 15 de marzo de 2023, mediante *Orden* se aseveró lo siguiente:

> "Teniendo el beneficio de la comparecencia de ambas partes se resuelve que dada la naturaleza de las pensiones excónyuges en tanto no son cosa juzgada, y ante la atención de las nuevas alegaciones en torno a evidencia de ingresos no reportados de la parte demandada, se señala vista evidenciaria para atender únicamente dichas alegaciones el día 20 de abril de 2023 a las 10:00 am hasta horas de la tarde.
> Al presente, se sostiene nuestra determinación en cuanto al pago requerido acorde a resolución del 8 de noviembre de 2022, sostenida al declarar sin lugar la reconsideración presentada el 14 de febrero de 2023. Su incumplimiento podría conllevar desacato al tribunal".[16]

El 21 de marzo de 2023, el señor **GARCÍA TORRES** presentó *Urgentísima Moción Solicitando se Deje Sin Efecto Hogar Seguro para Poder Proceder con la Venta de la Residencia Conyugal, según Convenido por las Partes*.[17] Acotó que, a partir de junio de 2022, se suspendieron los pagos hipotecarios, acumulando un atraso de diez (10) pagos; el 6 de diciembre de 2022, se instó una *Demanda* sobre cobro de dinero y ejecución de hipoteca ante el Tribunal Superior de Caguas; el 10 de marzo de 2023, se convino un *Contrato de Opción de Compraventa* para evitar la ejecución de la propiedad; e imploró dejar sin efecto la anotación de hogar seguro. El mismo día, la señora **ALBERTAZZI ACUÑA** presentó *Escrito Informando Posición de Demandada.*[18] Señaló que "se allana a que quede sin efecto la designación de hogar seguro de la propiedad y así poder vender la misma antes de ser ejecutada por el acreedor hipotecario". Ante esta situación, el 30 de marzo de 2023, se expidió una *Orden* levantando "la designación de hogar seguro de la

---

[15] Entrada núm. 281 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[16] Entrada núm. 287 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[17] Entrada núm. 289 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[18] Entrada núm. 290 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

propiedad en aras de que pueda ser puesta a la venta según ha sido la voluntad de las partes".[19]

El 20 de abril de 2023, se celebró una audiencia sobre las alegaciones de los ingresos no reportados por concepto del caudal hereditario de los progenitores difuntos de la señora **ALBERTAZZI ACUÑA**.[20] Se marcaron varios documentos como exhibit. El señor **GARCÍA TORRES** testificó que se vendieron dos (2) fincas ubicadas en el Barrio Luján en Costa Rica por unos 110,000 de colones (535 colones por dólar); eran tres (3) herederos; no se desprende de documento alguno que la señora **ALBERTAZZI ACUÑA** haya recibido dinero de esa venta; y la venta fue el 6 de agosto de 2020 cuando aún estaban casados. Atestiguó que estaban separados desde octubre de 2019; y se divorciaron en enero de 2021. Por otro lado, la señora **ALBERTAZZI ACUÑA** manifestó que desconocía los detalles sobre la venta; a cada uno de los herederos le correspondía una cantidad de $63,000.00; el dinero correspondiente a su hermano difunto fue guardado para los estudios de sus hijos, y el restante se le entregó a su hermano HÉCTOR como pago de lo que le debía; y no hubo sobrante alguno. El señor **GARCÍA TORRES** informó que la cantidad de $77,424.74, en concepto de la compraventa del inmueble de la extinta sociedad legal de gananciales, le fue depositada en la cuenta de la señora **ALBERTAZZI ACUÑA. El Tribunal reiteró que la señora ALBERTAZZI ACUÑA recibió $30,000.00 como adelanto de la venta de la residencia**. Finalmente, determinó que necesitaba conocer cuánto le adeuda a HÉCTOR ALBERTAZZI ACUÑA "para resolver la petición de dejar sin efecto la pensión excónyuge".

Después, el señor **GARCÍA TORRES** presentó *Moción en Cumplimiento de Orden y Reiterando Solicitud de Desestimación de la Pensión Excónyuge*.[21] Exteriorizó que el 31 de marzo de 2023, se había vendido la propiedad de la extinta sociedad legal de gananciales y la señora **ALBERTAZZI ACUÑA** recibió $77,424.74. Expresó que, la señora **ALBERTAZZI ACUÑA** cuenta con medios más que suficientes para su sustento, provenientes del caudal de la extinta sociedad legal de

---

[19] Entrada núm. 294 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[20] Apéndice de la *Petición*, págs. 106- 110.
[21] Apéndice de la *Petición*, págs. 54- 56.

gananciales, por lo que no es acreedora de pensión alguna, y se debe dejar sin efecto la obligación de alimentos. Acompañó copia de un recibo de depósito en la cuenta corriente (de cheques) culminando con los números 2756 del Banco Popular de Puerto Rico.

El 21 de septiembre de 2023, el señor **GARCÍA TORRES** presentó *Solicitud de Sentencia Sumaria.*[22] Resaltó que, desde el mes de enero de 2022, la señora **ALBERTAZZI ACUÑA** carece de necesidad económica, pues percibió una cantidad ascendiente a $30,000.00 como adelanto de su participación en los bienes de la extinta Sociedad Legal de Gananciales y en abril de 2023, recibió el importe de $77,424.74 por la compraventa del inmueble que constituyó hogar seguro para un total de $107,424.74. Igualmente, ha efectuado pagos ascendentes a $11,621.56 como pensión ex cónyuge. Ante ello, reiteró que los hechos no estaban en controversia; la señora **ALBERTAZZI ACUÑA** carece de necesidad económica por haber cobrado su participación de la comunidad de bienes ($107,424.74); y procede dejar sin efecto la pensión ex cónyuge.

Acto seguido, el 10 de octubre de 2023, la señora **ALBERTAZZI ACUÑA** presentó su *Solicitud de Desglose de "Solicitud de Sentencia Sumaria".*[23] En resumen, no se opuso al pedido y adujo que el señor **GARCÍA TORRES** no cumplió con las formalidades de la Regla 36 de las de Procedimiento Civil de 2009, por lo que procedía desglosar el escrito. El 30 de octubre de 2023, el señor **GARCÍA TORRES** presentó su *Réplica a "Solicitud de Desglose de Solicitud de Sentencia Sumaria" y Solicitud para que se Dé por Sometida la Solicitud de Sentencia Sumaria de Carlos García Torres.*[24] Reflexionó que la señora **ALBERTAZZI ACUÑA** no controvirtió ninguno de los hechos propuestos y quedó demostrado que no hay controversia respecto a las cuantías recibidas como ingreso.

Seguidamente, el 16 de noviembre de 2023, el señor **GARCÍA TORRES** presentó *Urgente Moción Solicitando Paralización Inmediata de la Pensión*

---

[22] *Íd.*, págs. 18- 73.
[23] *Íd.*, págs. 74- 76.
[24] Apéndice de la *Petición,* págs. 77- 87.

*Alimentaria*.[25] Argumentó que la señora **ALBERTAZZI ACUÑA** carece de fundamentos para controvertir el hecho cierto de que recibió $30,000.00 en enero de 2022; embolsó $77,000.00 en abril del 2023; cuenta con suficientes medios de fortuna y carece de necesidad económica.

El 30 de noviembre de 2023, se falló la *Orden* recurrida. Ese día, además, se prescribió *Orden* en relación a la moción solicitando paralización inmediata de la pensión, enunciando lo siguiente:

> "[s]in lugar. Existe un estado de necesidad determinado por el tribunal por lo que se mantiene la pensión excónyuge establecida hasta que se tenga la oportunidad de evaluar las nuevas circunstancias económicas alegadas de la Sra. **ALBERTAZZI ACUÑA**".[26]

El 18 de diciembre de 2023, el señor **GARCÍA TORRES** presentó *Solicitud de Reconsideración*.[27] Al día siguiente, la señora **ALBERTAZZI ACUÑA** presentó su *Oposición a "Solicitud de Reconsideración".*[28] El 20 de diciembre de 2023, el foro recurrido dispuso *Orden* declarando con lugar la *Oposición a "Solicitud de Reconsideración"* por incumplir con la Regla 36.3 de las de Procedimiento Civil.[29]

Insatisfecho con ese proceder, el 22 de enero de 2024, el señor **GARCÍA TORRES** acudió ante este foro revisor intermedio mediante una *Petición* e imputa la comisión del(de los) siguiente(s) error(es):

> Erró el TPI al declarar Sin Lugar la solicitud de Sentencia Sumaria desestimatoria del peticionario cuando no existe controversia sobre los hechos medulares.
>
> Erró el TPI al disponer la continuación del pago de una pensión ex cónyuge cuando la recurrida tiene sus propios medios de fortuna.
>
> Erró el TPI al no aplicar el Artículo 468 del Código Civil de 2020, el cual claramente dispone que el derecho a la pensión alimentaria del ex cónyuge se extingue cuando cesa la necesidad del alimentista.
>
> Erró el TPI al apartarse de la doctrina de *Correa Márquez v. Juliá Rodríguez*, 2017 TSPR 98, en claro abuso de su discreción.

El 24 de enero de 2024, intimamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de diez (10) días para mostrar causa por la cual no debíamos

---

[25] Entrada núm. 370 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[26] Entrada núm. 380 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[27] Apéndice de la *Petición,* págs. 8- 14.
[28] *Íd*., pág. 7.
[29] Apéndice de la *Petición*, pág. 5.

expedir el auto de *certiorari* y revocar el dictamen impugnado. El 1 de febrero de 2024, la señora **ALBERTAZZI ACUÑA** presentó su *Oposición a la Expedición del Auto de Certiorari*.

El 16 de febrero de 2024, pronunciamos *Resolución* reteniendo nuestra jurisdicción, y ordenamos elevar ante nos una *Resolución* debidamente fundamentada conteniendo los hechos y el derecho aplicable para denegar o declarar sin lugar la solicitud de sentencia sumaria presentada por el señor **GARCÍA TORRES**. En cumplimiento, el 15 de marzo de 2024, el foro primario concretó una *Resolución*.[30] El 8 de abril de 2024, el señor **GARCÍA TORRES** presentó su *Moción en Cumplimiento de Orden*. El 10 de abril de 2024, la señora **ALBERTAZZI ACUÑA** presentó su *Reacción a Resolución en Cumplimiento de Orden*.

Evaluado concienzudamente el expediente del caso; y contando con el beneficio de la comparecencia de ambas partes; nos encontramos en posición de resolver. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

- II -

- A - *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[31] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[32]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[33] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[34]

---

[30] Entrada núm. 447 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[31] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[32] *Íd.*
[33] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[34] *Íd.*

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[35] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[36] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[37]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones (Reglamento).[38]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[39] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;

---

[35] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[36] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[37] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[38] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra.*
[39] *Íd.*

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[40]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[41] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[42] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[43] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[44]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[45] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[46]

### - B – *Sentencia Sumaria*

La *sentencia sumaria* es un mecanismo procesal disponible para adjudicar controversias sin la celebración de un juicio.[47] Su propósito o finalidad es propiciar la solución justa, rápida y económica de los litigios civiles que no presentan

---

[40] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).

[41] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

[42] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).

[43] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

[44] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.

[45] *García v. Asociación*, 165 DPR 311, 322 (2005).

[46] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[47] *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, resuelto el 8 de mayo de 2024; *Birriel Colón v. Econo y otro*, 2023 TSPR 120; 213 DPR ___; *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022).

controversias genuinas de hechos materiales, y en los cuales sólo resta dirimir una controversia de derecho.[48]

Este mecanismo se encuentra instituido en la Regla 36 de las de Procedimiento Civil de 2009.[49] Esta prescribe que cualquiera de las partes "podrá presentar [...] una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[50]

Lo anterior implica que, la parte promovente debe demostrar que no existe *controversia sustancial* sobre algún hecho material, pues la *sentencia sumaria* solo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[51] Para ello, debe desglosar en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[52] La jurisprudencia interpretativa ha definido que "[u]n hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[53]

Por su parte, quien se opone a que se dicte *sentencia sumaria* está obligado a controvertir la prueba presentada, contestando de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en juicio.[54] Entre la evidencia que puede presentar,

---

[48] *Id.*

[49] 32 LPRA Ap. V, R. 36.

[50] 32 LPRA Ap. V, R. 36.1 y 36.2. *Acevedo y otros v. Dpto. Hacienda y otros*, 212 DPR 335 (2023).

[51] *Oriental Bank v. Caballero García*, 212 DPR 671 (2023).

[52] Regla 36.3(a) de las de Procedimiento Civil de 2009, *supra*. Antedicha Regla enuncia: (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

[53] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).

[54] *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010). La Regla 36.3 (b) de las de Procedimiento Civil de 2009 sobre la moción y procedimiento expone: La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente: (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior; (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos

están las siguientes: "certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits y hasta prueba oral".[55] Es decir, no basta con presentar meras afirmaciones. Resulta insuficiente para derrotar una solicitud de *sentencia sumaria* una declaración jurada que meramente exponga conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal de los hechos.[56] Empero, será el análisis del derecho aplicable y de la existencia de alguna *controversia sustancial de hechos materiales* lo que determinará si procede dictar sentencia sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[57]

Al evaluar la procedencia de la solicitud de *sentencia sumaria,* el tribunal **analizará los documentos que acompañan la moción de *sentencia sumaria*, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal**.[58] Por ello, "[t]oda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[59] El tribunal **no** tiene que considerar los hechos que no están debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia. Así como, tampoco debe apreciar cualquier declaración jurada o cualquier otra prueba a la cual no se haya hecho referencia en la relación de hechos.

No obstante, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; por el contrario, tiene que ser una duda que permita concluir

---

esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.
[55] *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023), citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. Ed., San Juan, LexisNexis, 2017, pág. 318. Regla 36.5 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36.5.
[56] *Íd.*, págs. 215- 216.
[57] *Ortiz v. Holsum*, 190 DPR 511, 525 (2014).
[58] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913 (1994). (énfasis nuestro).
[59] *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610- 611 (2000).

que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[60] Por tanto, "[existe] una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida".[61]

La parte promovente puede prevalecer por la vía sumaria si presenta prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. En cambio, la parte promovida puede derrotar la moción de tres (3) maneras diferentes: (1) si establece una controversia real de hechos sobre uno de los elementos de la causa de acción de la parte promovente; (2) si presenta prueba que apoye una defensa afirmativa; o (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la parte promovente.[62]

En caso de que el foro primario resuelva que procede la celebración de un juicio, es decir: (i) deniegue dictar *sentencia sumaria* sobre la totalidad del pleito; (ii) no conceda todo el remedio solicitado; o (iii) deniegue la moción de *sentencia sumaria*, tiene que consignar los hechos sobre los cuales no hay controversia. Ello, pues serán estos sobre los cuales será innecesario pasar prueba durante el juicio.[63] Del mismo modo, el tribunal puede dictar *sentencia sumaria* de naturaleza interlocutoria para resolver cualquier controversia que existe entre las partes y sea separable de las controversias restantes.[64]

Ahora bien, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar [denegaciones] o concesiones de mociones de *sentencia sumaria*.[65] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009 y su jurisprudencia interpretativa. Ello supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo

---

[60] *Ramos Pérez v. Univisión, supra*, pág. 214.
[61] *Íd.*
[62] *Íd.*, pág. 217.
[63] *Pérez Vargas v. Office Depot,* 203 DPR 687 (2003).
[64] 32 LPRA Ap. V, R. 36.3(e).
[65] *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

todas las inferencias permisibles a su favor. Como resultado, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma instituidos en la Regla 36 de las de Procedimiento Civil de 2009.[66]

En esencia, si el foro primario **acogió la moción** y dictó sentencia sumariamente, nos corresponderá revisar que, si efectivamente existen hechos materiales en controversia.[67] De existir, procederemos entonces a cumplir con la exigencia de la Regla 36.4 de las de Procedimiento Civil de 2009 y exponer concretamente cuáles hechos materiales se encontró que están en controversia y cuáles están incontrovertidos.[68] Puede hacerse en el dictamen en el cual se disponga del caso y hacer referencia al listado enumerado de hechos incontrovertidos dispuestos por el foro recurrido. Si se determina que los hechos materiales realmente están incontrovertidos, se procederá a revisar *de novo* si el Tribunal de Primera Instancia adjudicó correctamente el derecho.

En palabras sencillas, los tribunales revisores estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales; y (3) comprobar si el derecho se aplicó de forma correcta.[69]

## - III –

En el presente caso, el señor GARCÍA TORRES propuso que incidió el foro recurrido al declarar sin lugar su solicitud de sentencia sumaria desestimatoria cuando no existe controversia sobre hechos medulares; al disponer la continuación del pago de una pensión ex cónyuge cuando tiene sus propios medios de fortuna;

---

[66] *Birriel Colón v. Supermercado Los Colobos, supra.*

[67] *Rivera Matos et al. v. Triple S et al., supra.*

[68] La aludida Regla 36.4. sobre Pleito no decidido en virtud de moción decreta: Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será **obligatorio** que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.

[69] *Birriel Colón v. Supermercado Los Colobos, supra*; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 – 116 (2015).

no aplicar el artículo 468 del Código Civil de 2020; y al apartarse de la doctrina de *Correa Márquez v Juliá Rodriguez*, ello en claro abuso de su discreción.[70]

En otras palabras, arguyó que, la señora **ALBERTAZZI ACUÑA** no tiene derecho a una pensión excónyuge, toda vez que, ésta actualmente cuenta con medios más que suficientes para su sustento. Particularmente, la señora **ALBERTAZZI ACUÑA** percibió la cantidad de $30,000.00 en enero del 2022 y la cuantía de $77,424.74 en abril de 2023, lo cual totaliza $107,424.74 y estos hechos no fueron rebatidos. Por lo anterior, concluyó que procede la desestimación y revocación de la pensión ex cónyuge a favor de la señora **ALBERTAZZI ACUÑA**.

Por su parte, la señora **ALBERTAZZI ACUÑA** expuso que se denegó la petitoria del señor **GARCÍA TORRES** por este no cumplir con las formalidades dispuestas en las Reglas de Procedimiento Civil. Apuntaló que; no hubo abuso de discreción, ni se incurrió en prejuicio o parcialidad.

Como cuestión de umbral, precisa señalar que, a tenor con la normativa atinente a la revisión de *sentencia sumaria*, y luego de evaluar concienzudamente los respectivos escritos presentados, hallamos que la *Solicitud de Sentencia Sumaria* presentada el 21 de septiembre de 2023 por el señor **GARCÍA TORRES** cumple, a grandes rasgos, con los requisitos de forma estatuidos en la Regla 36 de las de Procedimiento Civil de 2009, *supra*. Esto es, el señor **GARCÍA TORRES** incluyó una relación en párrafos enumerados de los hechos esenciales que consideraba incontrovertidos; hizo alusión a los anejos incluidos (prueba admisible en evidencia) aunque no hizo referencia a los párrafos o las páginas de los documentos que establecieran tales hechos, tal y como lo exige la Regla 36.3 de las de Procedimiento Civil de 2009, *supra*. La *Solicitud de Desglose de "Solicitud de Sentencia Sumaria"* presentada el 10 de octubre de 2023 por la señora **ALBERTAZZI ACUÑA no** cumple con los requisitos de una oposición. Ello, sin embargo, no dispone sin más de la controversia ante nuestra consideración.

Al revisar la totalidad del expediente judicial, este revela que el foro recurrido aplicó correctamente la Regla 36 de las de Procedimiento Civil de 2009.

---

[70] 198 DPR 315 (2017).

En ese sentido, determinó los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, y aquellos que están en disputa. En consecuencia, acogemos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial (no controvertidos). Empero, tras un examen ponderado de los documentos del legajo, se **modifican** las controversias de derecho pendientes. De los cuatro (4) hechos esenciales y pertinentes que están realmente y de buena fe controvertidos que están pendientes a dilucidarse en sus méritos, según el tribunal primario, entendemos que el número 1 debe **modificarse o enmendarse** para leer:

> Si la señora ALBERTAZZI ACUÑA aún tiene necesidad económica, a pesar de haberse vendido la propiedad que fue el hogar familiar de las partes, por lo cual recibió **$107,424.74**.

Es nuestro deber revisar si el foro de instancia aplicó correctamente el derecho al asunto que nos ocupa. Resolvemos en la afirmativa. Lo cierto es que, sí existen dudas en torno a la necesidad económica de la señora ALBERTAZZI ACUÑA. En definitiva, colegimos que el tribunal primario no erró ni abusó de su discreción, cometió perjuicio o error manifiesto al declarar no ha lugar la *Solicitud de Sentencia Sumaria* presentada el 21 de septiembre de 2023 por el señor GARCÍA TORRES, toda vez que, su determinación es esencialmente correcta y encontró fundamento en los documentos que obran en el expediente judicial. En conclusión, **no** se incidió en los errores señalados.

- IV –

Por los fundamentos antes expuestos, *expedimos* el auto de *Certiorari* a los fines de *modificar* la determinación judicial para **enmendar** la controversia número 1 (la cuantía debe leer **$107,424.74**); así modificada, *confirmamos* la *Resolución* pronunciada el 15 de marzo de 2024 por el Tribunal de Primera Instancia, Sala Superior de Caguas, en todos sus demás extremos; y *devolvemos* el caso al foro primario para la continuación de los procedimientos de forma compatible con nuestros pronunciamientos.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia, Sala Superior de Caguas, puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[71]

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[71] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.